STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * *

2020 CA 1211

APRIL MARKIEWICZ, WIFE OF/AND MARK MARKIEWICZ

VERSUS

SUN CONSTRUCTION, L.L.C., PENN MILL LAKES, L.L.C., AND COOPER
ENGINEERING, INC., A PROFESSIONAL ENGINEERING CORPORATION

*--CONSOLIDATED WITH--*

2020 CA 1212

JANET SHEA, WIFE OF/AND ALPHONSE SHEA

VERSUS

SUN CONSTRUCTION, L.L.C.; SUNRISE CONSTRUCTION AND DEVELOPMENT,
L.L.C.; PENN MILL LAKES, L.L.C.; COOPER ENGINEERING, INC., A PROFESSIONAL
ENGINEERING CORPORATION

*--CONSOLIDATED WITH--*

2020 CA 1213

PATRICIA GRANT WIFE OF/AND RICHARD GRANT; ET. AL., INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

VERSUS

SUN CONSTRUCTION, L.L.C., PENN MILL LAKES, L.L.C., SUNRISE CONSTRUCTION
AND DEVELOPMENT, L.L.C., AND COOPER ENGINEERING, INC., A PROFESSIONAL
ENGINEERING CORPORATION

JUDGMENT RENDERED:    JUN 2 2 2021

* * * * * * *

Appealed from the Twenty-Second Judicial District Court
In and for the Parish of St. Tammany • State of Louisiana
Docket No. 2006-16084 *c/w* 2008-10737 *c/w* 2008-11536 • Division I

The Honorable Reginald Badeaux, III, Judge Presiding

* * * * * * *

| | | | |
|---|---|---|---|
| Maurice LeGardeur<br>Covington, Louisiana<br>*and*<br>Adam S. Lambert<br>New Orleans, Louisiana | COUNSEL FOR APPELLANTS<br>PLAINTIFFS—April Markiewicz,<br>Mark Markiewicz, Janet Shea,<br>Alphonse Shea, Patricia Grant,<br>Richard Grant, Marguerite Guarino,<br>William Guarino, Sheron Sprawls,<br>Vernon Sprawls, Dianne White,<br>New Orleans, Louisiana<br>Johnny White, Jo Anne Youngblood,<br>William Youngblood, Lynell Rowan,<br>Alvin Rowan, Gayle Ayo, James<br>Ayo, Deborah Lascari, Daniel<br>Lascari, and on behalf of All Others<br>Similarly Situated | Glen E. Mercer<br>Kourtney French Twenhafel<br>New Orleans, Louisiana | COUNSEL FOR APPELLEE<br>DEFENDANT—Clarendon<br>America Insurance<br>Company |
| | | Robert I. Siegel<br>Tucker T. Bohren | COUNSEL FOR APPELLEE<br>DEFENDANT—Insurance<br>Company of the State of<br>Pennsylvania |
| | | Andrian G. Nadeau<br>Brad M. Barback<br>Baton Rouge, Louisiana | COUNSEL FOR APPELLEES<br>DEFENDANTS—John E.<br>Bonneau and John E. Bonneau<br>and Assoc., Inc. |
| Thomas P. Anzelmo, Sr.<br>Lynda Tafaro<br>New Orleans, Louisiana | COUNSEL FOR APPELLEES<br>DEFENDANTS—St. Tammany Parish<br>Government, James A. (Red)<br>Thompson, and Jean M. Thibodeaux | David M. Moragas<br>Mandeville, Louisiana | COUNSEL FOR APPELLEE<br>DEFENDANT—Zurich<br>American Insurance Co. |
| Louis E. Koerner, Jr.<br>New Orleans, Louisiana | APPELLEE<br>DEFENDANT—*Pro Se* | J. Scott Loeb<br>Jonas P. Baker<br>Mandeville, Louisiana<br>*and*<br>Carl T. Conrad<br>C. T. Williams, Jr.<br>Aldric C. Poirier, Jr.<br>Mandeville, Louisiana<br>*and*<br>John S. Lawrence, Jr.<br>Mandeville, Louisiana | COUNSEL FOR APPELLEES<br>DEFENDANTS—Sun<br>Construction, LLC;<br>Lawrence A. Kornman; Penn<br>Mill Lakes, LLC; and Sunrise<br>Construction Development,<br>LLC |

* * * * * *

**BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.**

**WELCH, J.**

The plaintiffs appeal an amended judgment granting the motion for summary judgment filed by defendants the St. Tammany Parish Government ("STPG"), James A. "Red" Thompson, and Jean M. Thibodeaux, P.E., denying the motion for partial summary judgment filed by the plaintiffs, granting the cross-motion for partial summary judgment filed by defendant the STPG, and dismissing the plaintiffs' claims against the STPG, Mr. Thompson, and Mr. Thibodeaux. Also before this Court is a motion to strike the plaintiffs' (appellants') reply brief filed by the defendants (appellees) and a responsive request by the plaintiffs for sanctions. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court; we grant in part and deny in part the motion to strike; we deny the plaintiffs' request for sanctions; and we remand for further proceedings.

### FACTUAL AND PROCEDURAL HISTORY

The underlying litigation herein arises out of several consolidated lawsuits involving a drainage project and the subsequent flooding of Penn Mill Lakes Subdivision ("the Subdivision") in St. Tammany Parish, Louisiana. The plaintiffs, who are homeowners in the Subdivision, filed suit against various entities involved in the drainage project and their insurers seeking to recover damages resulting from the flooding. More specifically, April and Mark Markiewicz filed suit on December 8, 2006, and Janet and Alphonse Shea filed suit on February 8, 2008, asserting claims under the New Home Warranty Act, La. R.S. 9:3141, *et seq.*, and alleging that the defective design, construction, and planning of the drainage system had caused flooding in the Subdivision.[1] Thereafter, on March 20, 2008, Patricia Grant, Richard Grant, Marguerite Guarino, William Guarino, Sheron Sprawls, Vernon Sprawls, Dianne White, Johnny White, Jo Ann Youngblood,

---

[1] The Sheas alternatively alleged claims in negligence, strict liability, and nuisance.

2

William Youngblood, Lynell Rowan, Alvin Rowan, Gayle Ayo, James Ayo, Deborah Lascari,[2] and Daniel Lascari filed a class action petition, individually and on behalf of all others similarly situated. In that petition, plaintiffs asserted claims in negligence, strict liability, and nuisance and also alleged that the drainage system utilized throughout the Subdivision, which included drainage retention ponds/lakes, was defective in design, as constructed, and as installed. These matters were ultimately consolidated by judgments dated January 6, 2009, and the class action petition was amended numerous times thereafter.

Pursuant to the original and amended class action petitions, plaintiffs[3] named as defendants various individuals and entities allegedly involved in the design, construction, approval, and maintenance (or lack thereof) of the drainage system in the Subdivision.[4] At issue herein are the claims asserted in the plaintiffs' third amended class action petition,[5] filed on June 13, 2014, wherein the plaintiffs

---

[2] Deborah Lascari subsequently withdrew as a plaintiff/member of the putative class.

[3] Pursuant to the fourth amended class action petition, plaintiffs named Susan Casey and Penn Mill Lakes Homeowners' Association as additional plaintiffs.

[4] The named defendants include: Penn Mill Lakes, L.L.C., and Sunrise Construction and Development, L.L.C., as the developers of the Subdivision; Sun Construction, L.L.C., as the general contractor/builder of the Subdivision; Lawrence Kornman, as the manager of Sun Construction and Penn Mill Lakes, L.L.C.; Cooper Engineering, Inc. and its successor corporation, as the engineering firm responsible for designing the drainage system in the Subdivision; Leroy Cooper, as the alleged owner of Cooper Engineering and the employee principally responsible for the design of the drainage system in the Subdivision; the STPG; James A. "Red" Thompson, the St. Tammany Parish Councilman for the geographic area that includes the Subdivision; and Jean M. Thibodeaux, P.E., the Director of Engineering and Parish Engineer for the STPG, for the approval of the development, issuance of building permits, and alleged acceptance of the streets, swales, drainage system, and retention ponds/lakes into parish ownership and maintenance; John E. Bonneau and John E. Bonneau & Associates, Inc., who provided professional land surveying services on behalf of the developers of the Subdivision, including the preparation of elevation certificates that were provided to the homeowners; and certain insurers of various defendants.

[5] In the second amended class action petition, the plaintiffs added the STPG as defendants. The plaintiffs claimed that the STPG knew that there would be serious drainage and flooding problems in the Subdivision and that the STPG knew that its flood and subdivision ordinances were not being followed by the defendants that designed the Subdivision. The plaintiffs further alleged that despite this knowledge and its knowledge of potential flooding issues, the STPG approved the initial development and later phases and that it continued to issue permits and to authorize the construction of homes for sale to the public in the flood-prone area. Thus, the plaintiffs claimed that the STPG actively breached its obligations to the plaintiffs by approving the Subdivision and issuing construction permits. In response to the plaintiffs' second amended petition, STPG filed an answer generally denying the allegations of liability and asserting various affirmative defenses, including that it was entitled to discretionary immunity with respect to the

named as additional defendants the STPG, a public entity, asserting it was vicariously liable for the intentional/negligent acts of its elected officials, employees, and agents who, within the course and scope of their employment and in furtherance of their duties, aided and abetted in allowing permits to be issued in an obviously poorly drained subdivision; James A. "Red" Thompson, the St. Tammany Parish Councilman for the geographic area that included the Subdivision; and Jean M. Thibodeaux, P.E., the Director of Engineering and Parish Engineer for the STPG (collectively "the STPG defendants"). In the third amended class action petition, the plaintiffs essentially alleged that the STPG defendants knew that the Subdivision would flood unless the St. Tammany Parish Flood Hazard Area Ordinance, Parish Ordinance Sec. 7-016.00, *et seq.* (sometimes referred to as "the flood ordinances") and St. Tammany Parish Subdivision Regulations, Ordinance Number 499 (Appendix B, Chapter 40) (sometimes referred to as "Subdivision Ordinance 499" or "the subdivision ordinances") were complied with by the designers of the Subdivision; they knew that the flood and subdivision ordinances were not complied with by the designers of the Subdivision; and although the STPG defendants were mandated to uphold those flooding and subdivision ordinances, they intentionally suppressed and conspired with the developers and designers of the Subdivision not to enforce or require compliance with those ordinances because the STPG defendants approved the initial development and later phases of the Subdivision and issued building permits and those defendants intentionally concealed this information from the plaintiffs and potential purchasers of property in the Subdivision. The plaintiffs also alleged that the STPG "ultimately accepted the dedication of the streets, swales, drainage

---

approval of subdivisions and the issuance of building permits pursuant to various statutes discussed hereinafter. In addition, the STPG filed a peremptory exception raising the objection of no cause of action on the same basis (discretionary immunity), which the trial court sustained. In connection therewith, the trial court dismissed the plaintiffs' claims against the STPG without prejudice and granted the plaintiffs leave to amend their petition. Thereafter, the plaintiffs filed the third amended class action petition at issue herein.

4

system, and retention ponds[/lakes] into Parish/public ownership and maintenance thereby inheriting the problems created by the [designers] of this STPG-approved subdivision" and that "[i]nasmuch as STPG has accepted perpetual maintenance, despite prior knowledge of the design defects and flooding problems by parish officials, the STPG [was] a party needed for just adjudication" under La. C.C.P. art. 641.

In response to the third amended class action petition, the STPG defendants filed an answer, essentially denying liability and asserting various affirmative defenses, including that, in accordance with La. R.S. 9:2798.1, they were entitled to discretionary immunity for the act of approving or disapproving a subdivision pursuant to La. R.S. 33:101.1; for the performance or non-performance of acts related to the enforcement of building and construction codes, drainage improvements, structures, and other improvements to immovable property pursuant to La. R.S. 40:1730.23(C) and La. R.S. 33:4771, *et seq.*; and for the acts of members of boards, commissions, or authorities of political subdivisions pursuant to La. R.S. 9:2792.4.

Thereafter, on June 8, 2018, the STPG defendants filed a motion for summary judgment on the issue of discretionary immunity and seeking the dismissal of the plaintiffs' claims of conspiracy, fraud, and unfair trade practices against the STPG defendants. The plaintiffs then filed a motion for partial summary judgment on the issue of the Subdivision drainage system, including the ponds/lakes being subject to a public servitude of drainage in favor of the Parish, such that the Parish was responsible for its upkeep, maintenance and operation. The STPG defendants responded with a cross-motion for partial summary judgment seeking judgment declaring that the Penn Mill Lakes Homeowners' Association ("the HOA") (as opposed to the STPG) was the owner of and solely

responsible for the operation and maintenance of the drainage retention ponds/lakes in the Subdivision.

All of these motions were heard and considered by the trial court on November 13, 2018. Pursuant to written reasons for judgment issued on February 14, 2019, the trial court granted the motion for summary judgment filed by the STPG defendants with respect to immunity for discretionary acts; granted the cross-motion for summary judgment filed by the STPG with respect to the ownership of the drainage ponds/lakes, declaring that the HOA was the owner of the drainage ponds/lakes, that the drainage ponds/lakes had not been accepted into maintenance by the STPG, and that the HOA was responsible for the operation and maintenance of the drainage ponds/lakes in the Subdivision; and dismissed all of the plaintiff's claims against the STPG defendants with prejudice. An amended judgment[6] in accordance with the trial court's written reasons was signed on June 17, 2020, and it is from this judgment that the plaintiffs have appealed, essentially challenging the trial court's rulings with respect to all three motions.[7]

---

[6] The original judgment, signed by the trial court on February 14, 2019, was appealed; however, that appeal was dismissed for lack of jurisdiction because the original judgment lacked appropriate decretal language and could not be considered a final judgment for purposes of appeal. See **Markiewicz v. Sun Construction, LLC**, 2019-0869 (La. App. 1st Cir. 5/28/20) 304 So.3d 877, 880-881. An amended judgment containing appropriate decretal language was subsequently signed by the trial court on June 17, 2020, and this appeal was taken from that judgment.

[7] While this appeal was pending, the STPG defendants filed a motion to strike portions of the plaintiffs' reply brief, contending that it violated Uniform Rules, Courts of Appeal—Rule 2-7.2 and 2-12.6 because it was not "strictly confined to rebuttal of points" raised by the STPG defendants' brief and raised new issues that the plaintiffs had not raised in their original brief or before the trial court. More specifically, the STPG defendants contend that the plaintiffs raised the issue of whether the STPG defendants' conduct fell within an exception to discretionary immunity, whether the subdivision ordinance was a building code (with an attempt to include a copy of the table of contents for the St. Tammany Parish Code of Ordinances), whether discretionary immunity applied to the approval of construction and developments in FEMA flood hazard zones, and whether the plaintiffs were being subjected to dual taxation by requiring the HOA to maintain the ponds/lakes.

In response, the plaintiffs contend that the STPG defendants' motion is meritless and requests that the STPG defendants be sanctioned. The plaintiffs maintain that the issue relative to whether the STPG defendants' conduct fell within the exception to discretionary immunity was previously raised before the trial court and in its original brief. In addition, the plaintiffs contend that the other issues raised in their reply brief were also raised in its reply brief in **Markiewicz**, 304 So.3d 877, which was the appeal that was dismissed due to the lack of decretal language in the judgment.

## SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Jones v. Anderson,** 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So.3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof rests on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

On the other hand, when the mover will bear the burden of proof at trial, the mover has the burden of showing that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Only when the mover makes this showing does the burden shift to the opposing party to present evidence

---

After reviewing the record on appeal, the motions for summary judgment and the briefs filed herein, we find that the issue relative to whether the STPG defendants' conduct fell within the exception to discretionary immunity was raised in the plaintiffs' third amended class action petition, before the trial court on the STPG defendants' motion for summary judgment, and on appeal in the plaintiffs' original brief. Therefore, we deny that portion of the motion to strike. However, we also find that the remaining issues, *i.e.*, whether the subdivision ordinance is a building code (with the attempt to include a copy of the table of contents for the St. Tammany Parish Code of Ordinances), whether discretionary immunity applies to the approval of construction and developments in FEMA flood hazard zones, and whether the plaintiffs are being subjected to dual taxation by requiring the HOA to maintain the ponds/lakes are new issues that were not raised in the trial court or by the appellants original brief on appeal herein. Therefore, we grant that portion of the motion to strike and will not consider those issues on appeal. For the same reason, we deny the plaintiffs' request for sanctions.

demonstrating a material factual issue remains. **Action Oilfield Services, Inc. v. Energy Management Company,** 2018-1146 (La. App. 1st Cir. 4/17/19), 276 So.3d 538, 542. If, however, the mover does not resolve all material issues of fact, the burden never shifts to the opposing party. In that situation, the opposing party has nothing to prove in response to the motion for summary judgment, and summary judgment should be denied. See **Hat's Equipment, Inc. v. WHM, L.L.C.,** 2011-1982 (La. App. 1st Cir. 5/4/12), 92 So. 3d 1072, 1076.

On appeal, summary judgments are reviewed *de novo* using the same criteria used by the district court in determining whether summary judgment is appropriate. See **Hogg v. Chevron USA, Inc.,** 2009-2632 (La. 7/6/10), 45 So.3d 991, 996. Thus, the appellate court asks the same questions as the district court: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. **Crosstex Energy Services, LP v. Texas Brine Company, L.L.C.,** 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So.3d 932, 936, writ denied, 2018-0145 (La. 3/23/18), 238 So.3d 963. Because it is the applicable law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can be seen only in light of the substantive law applicable to the case. **Dickerson v. Piccadilly Restaurants, Inc.,** 99-2633 (La. App. 1st Cir. 12/22/00), 785 So.2d 842, 844.

## DISCRETIONARY IMMUNITY
*(The STPG Defendants' Motion for Summary Judgment)*

As set forth above, the STPG defendants filed a motion for summary judgment as to their affirmative defense of discretionary immunity, seeking the dismissal of the plaintiffs' claims against them for approving the Subdivision and issuing permits, and for conspiracy, fraud, and unfair trade practices. The STPG defendants contend that they complied with the subdivision and flood ordinances, but nonetheless, as a matter of law, under the provisions of La. R.S. 9:2798.1, the "[STPG], as a public body, [was] immune from suit for [its] discretionary

decisions, including the approval of subdivisions, the issuance of building permits, and the enforcement of building codes, as specifically provided" for in La. R.S. 33:101.1, 33:4471, *et seq.*, and 40:1730.23(C). The STPG defendants also point out that the plaintiffs have no facts to support their allegations of conspiracy, fraud, or unfair trade practices, and therefore, the dismissal of those claims is warranted.

In opposition to the STPG defendants' motion for summary judgment, the plaintiffs argue that compliance with the subdivision and flood ordinances was mandatory, not discretionary and thus, discretionary immunity does not apply to the STPG defendants' actions in issuing permits and approving the Subdivision. The plaintiffs also argue that the STPG defendants' actions and omissions in violating STPG's own flood and subdivision ordinances constituted a conspiracy, fraud, or unfair trade practice, and thus falls outside of the discretionary immunity provisions set forth in La. R.S. 9:2798.1(C)(2).

Louisiana Revised Statutes 9:2798.1 provides, in pertinent part:

A. As used in this Section, "public entity" means and includes the state and any of its ... political subdivisions and the ... and employees of such political subdivisions.

B. Liability shall not be imposed on public entities or their officers or *employees based upon the exercise or performance or the failure to exercise or perform their* policymaking or *discretionary acts* when such acts are within the course and scope of their lawful powers and duties.

C. The provisions of Subsection B of this Section are not applicable:

* * *

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
(Emphasis added)

The plaintiffs' petition, as amended, alleges and the STPG defendants admit that the STPG is a political subdivision of the State of Louisiana, that Mr. Thompson as a Councilman for the Parish of St. Tammany is an officer of STPG, and that Mr. Thibodeaux was employed by the STPG as the Director of

9

Engineering and Parish Engineer. Thus, pursuant to La. R.S. 9:2798.1, the STPG defendants are entitled to immunity for discretionary actions that are within the course and scope of their lawful powers and duties, unless those actions constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

In **Simeon v. Doe**, 618 So.2d 848, 852-853 (La. 1993) and **Fowler v. Roberts**, 556 So.2d 1, 15 (La. 1989) (on rehearing), the Louisiana Supreme Court adopted the test laid out by the United States Supreme Court in **Berkovitz by Berkovitz v. United States**, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) to determine whether the discretionary acts doctrine applied to shield public entities from liability. First, a court must determine whether a statute, regulation, or policy specifically prescribes the course of action for the employees or agency to follow; if so, there is no discretion on the part of the employee or agency, and therefore, no immunity. **Simeon**, 618 So.2d at 852-853; **Fowler**, 556 So.2d at 15. If a court determines discretion is involved, the court must then determine whether that discretion is the kind which is shielded by the exception, that is, one grounded in social, economic, or political policy. **Simeon**, 618 So.2d at 853; **Fowler**, 556 So.2d at 15. If it is, the doctrine applies and the employee or agency is insulated from liability; if it is not, the employee or agency is liable for any negligence. **Simeon**, 618 So.2d at 853; **Fowler**, 556 So.2d at 15.

The plaintiffs contend that the STPG defendants' actions fail the first part of this test because compliance with the flood and subdivision ordinances is mandatory. However, the plaintiffs' third amended class action petition does not allege that the STPG defendants had any role in the actual construction of the Subdivision or its drainage facilities that were purportedly not in compliance with the flood and subdivision ordinances. Rather, the plaintiffs allege that the STPG defendants approved the subdivision developments (both the initial and subsequent

10

phases) and issued building permits, even though the STPG defendants allegedly knew that the flood and subdivision ordinances had not been complied with.

In conjunction with La. R.S. 9:2798.1, La. R.S. 40:1730.23(C) specifies that certain actions constitute "discretionary acts" by providing as follows:

> In *connection with the construction of any building, structure, or other improvement to immovable property*, neither the performance of any *enforcement procedure nor any provision of a building code* shall constitute or be construed as a warranty or guarantee by a governmental enforcement agency as to durability or fitness, or as a warranty or guarantee by a governmental enforcement official or a third-party provider who contracts with a municipality or parish as provided for in R.S. 40:1730.24(A), that said building, structure, or other improvement to immovable property or any materials, equipment, or method or type of construction used therein is or will be free from defects, will perform in a particular manner, is fit for a particular purpose, or will last in any particular way. *In the enforcement of any provision of a construction code provided for in this Part, or any regulations governed by R.S. 33:4771[,] et seq., the performance or non-performance of any procedure by a governmental enforcement agency, contract employee, or official shall be deemed to be a discretionary act and shall be subject to the provisions of R.S. 9:2798.1.*
> (Emphasis added).

Under the regulations governed by La. R.S. 33:4771, *et seq.*, we note that La. R.S. 33:4771(5) defines an "[e]nforcement procedure" as:

> any act, action, or failure to take action by a public servant or enforcement agency in connection with the implementation of any provision of a building code, including but not limited to the examination or review of any plan, drawing, or specifications, the conducting or completion of any inspection, *the issuance*, denial, or revocation *of any permit*, permission, license, or certificate, and the *granting of any approval of construction*.
> (Emphasis added).

Additionally, La. R.S. 33:4471(2) provides that a "[b]uilding code" is

> any building, mechanical, plumbing, electrical, fire prevention, or *other regulatory code or ordinance adopted by a political subdivision which establishes minimum standards* for the use, occupancy, design, planning, engineering, construction, alteration, installation, repair, maintenance, location, removal, or demolition of any building, structure, or improvement to immovable property or for the quality of materials or equipment used in connection therewith.
> (Emphasis added).

Moreover, La. R.S. 33:4771(7) defines an "[i]mprovement" to mean "any permanent alteration, addition, embellishment, or betterment of immovable property or any modification of land by man, including but not limited to roads, pipelines, sewerage facilities, grating, *drainage facilities, levees, or other flood control facilities*." (Emphasis added).

In addition, La. R.S. 33:4772 provides that the enforcement of building codes by a political subdivision does not impose any duty upon a political subdivision to any individual group or group of persons, as it provides:

> The legislature hereby finds and declares that:
>
> (1) The policy, purpose, and intent for the promulgation and adoption of a building code by a political subdivision is to promote the safety, health, morals, and general welfare of the community.
>
> (2) The policy, purpose, and intent of the enforcement of a building code by an enforcement agency is the reasonable protection of the safety, health, morals, and general welfare of the public.
>
> (3) Nothing contained in this Subpart or in any building code shall be construed as establishing or imposing upon a political subdivision a duty, special or otherwise, to or for the benefit of any individual person or group of persons.

Similarly, La. R.S. 33:4773(D) provides that the performance of an enforcement procedure does not constitute any type of warranty or guarantee of fitness, and it provides

> In connection with the construction of any building, structure, or other improvement to immovable property, neither the performance of any enforcement procedure nor any provision of a building code shall constitute or be construed as a warranty or guarantee by an enforcement agency as to durability or fitness, or as a warranty or guarantee by an enforcement agency that said building, structure, or other improvement to immovable property or any material, equipment, or method or type of construction used therein is or will be free from defects, will perform in a particular manner, is fit for a particular purpose, or will last in any particular way.

Lastly, La. R.S.33:101.1 specifically provides that the approval of a subdivision plat involves the exercise of discretion, and does not impose a duty for the benefit of any individual or group of persons by providing:

12

Except as otherwise provided in this Subpart, *the act of approving or disapproving a subdivision plat is hereby declared a legislative function involving the exercise of legislative discretion by the planning commission,* based upon data presented to it; provided that any subdivision ordinance enacted by the governing authority of a parish or municipality or the acts of the planning commission, or planning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of police powers, an excessive use of the power herein granted, or denial of the right of due process. The right of judicial review of a subdivision ordinance shall not be limited by the foregoing, however, nothing contained in this Subpart or in any subdivision ordinance adopted by a parish or municipality shall be construed as imposing upon such parish or municipality a duty, special or otherwise, to or for the benefit of any individual person or group of persons.
(Emphasis added).

Thus, by statute, the review of plans, the conducting of inspections, the issuance of building permits, and the approval of construction or other improvements to immovable property, including drainage and flood control facilities, the approval of subdivisions, and the enforcement of building codes by public entities, their officers, or their employees, are discretionary actions for which they are immune from liability, unless those actions constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. Furthermore, such actions do not constitute a warranty or guarantee of fitness.

As previously set forth, the plaintiffs' third amended class action petition alleges that the STPG defendants are liable for approving the Subdivision and issuing building permits when the Subdivision's developers and designers failed to comply with the flood and subdivision ordinances. While the STPG defendants maintain that the Subdivision's developers and designers complied with the flood and subdivision ordinances, by statute, the STPG defendants are immune from liability for such discretionary actions, including approving the Subdivision and issuing building permits, unless those actions constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. In this regard, the plaintiffs assert that the STPG defendants' actions constituted a

13

conspiracy, fraud, and unfair trade practices. Thus, at trial, in order establish liability on the part of the STPG defendants, the plaintiffs will have the burden of proving their claims of conspiracy,[8] fraud,[9] or unfair trade practices.[10]

As previously set forth, defendants contend in their motion for summary judgment, that there is an absence of factual support for the plaintiffs' claims of conspiracy, fraud, and unfair trade practices, as no such acts by the STPG defendants have been established. In support thereof, the STPG defendants rely on and point to the deposition testimony of all of the plaintiffs, including a representative of the HOA, as well as the deposition of Leroy J. Cooper, the engineer involved in the design and development of the Subdivision, including its drainage system and with whom the STPG defendants allegedly conspired. Notably, none of the plaintiffs were able to testify that they had any evidence or knowledge of a conspiracy, fraud, violations of ordinances, or other acts constituting unfair trade practices by or involving the STPG defendants.

After thoroughly reviewing the depositions of the plaintiffs, we find, on *de novo* review, that the STPG defendants met their burden of pointing out the

---

[8] The term "conspiracy" generally means a plan by two or more persons to accomplish some unlawful, immoral, criminal, or evil purpose. **Payne v. Stanley**, 53,773 (La. App. 2nd Cir. 3/3/21), ___ So.3d ___, ___, 2021 WL 800573 *4, writ denied, 2021-00480 (La. 5/25/21)___ So.3d ___, 2021 WL 2102575. In order to recover under a theory of civil conspiracy, a plaintiff must show that an agreement existed among the defendants to commit the tortious act which caused the plaintiff's injury. *Id.*

[9] Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other; fraud may also result from silence or inaction. La. C.C. art. 1953. In order to recover for fraud, the plaintiff bears the burden of proving (1) a misrepresentation of material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury. **Renton Properties, LLC v. 213 Upland, LLC**, 2020-133 (La. App. 5th Cir. 10/5/20), 304 So.3d 1083, 1093, writ denied, 2020-1395 (La. 1/26/21), 309 So.3d 345. Additionally, in order to prevail in an action for fraud due to silence or suppression of the truth, there must be a duty to speak or disclose information. *Id.*

[10] The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. See La. R.S. 51:1405(A). In order to recover under LUTPA, a plaintiff must prove some element of fraud, misrepresentation, deception, or other unethical conduct on the part of the defendant. **Cheramie Services, Inc. v. Shell Deepwater Production, Inc.**, 2009-1633 (La. 4/23/10), 35 So.3d 1053, 1059. Furthermore, under LUTPA, the plaintiff must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. *Id.*

14

absence of factual support for the plaintiffs' claims that the STPG defendants engaged in a conspiracy, fraud, or unfair trade practices. Indeed, not a single plaintiff was able to provide any evidence of any act or omission by the STPG that could be considered a conspiracy, fraud, or unfair trade practice. Furthermore, we find that the plaintiffs, in opposition to the STPG defendants' motion for summary judgment, failed to present any documents evidencing a genuine issue of material fact as to this issue. Rather, the plaintiffs simply focused on their contention that compliance with the flood and subdivision ordinances was mandatory, and thus, discretionary immunity was inapplicable. However, as we have determined otherwise and since none of the evidence submitted by the plaintiffs demonstrates that any factual issue remains as to whether the STPG defendants engaged in any acts that constituted criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct, we find that the STPG defendants established their entitlement to summary judgment on the issue of discretionary immunity.

Accordingly, we find that the trial court properly granted the STPG defendants' motion for summary judgment and dismissed the plaintiffs' claims against them relative to the approval of the Subdivision and issuance of permits, as well as the claims of conspiracy, fraud, and unfair trade practices. Therefore, that portion of the June 17, 2020 judgment of the trial court granting the STPG defendants' motion for summary judgment and dismissing the plaintiffs' claims against Mr. Thompson and Mr. Thibodeaux is affirmed.

## RESPONSIBILITY FOR MAINTENANCE
## OF DRAINAGE PONDS
*(Plaintiffs' Motion for Partial Summary Judgment and*
*STPG's Cross-Motion for Partial Summary Judgment)*

As previously set forth, the plaintiffs filed a motion for partial summary judgment, seeking a "[f]inding that the ... Subdivision drainage ponds[/lakes] as well as the entire ... Subdivision drainage system, including each and every one of

its component parts, are subject to **A PUBLIC USE SERVITUDE OF DRAINAGE IN PERPETUITY IN FAVOR OF THE PARISH OF ST. TAMMANY** which must be charged with its upkeep, maintenance, and operation at public expense as long as necessary to ensure the health, safety, and welfare of the residents of [the] ...Subdivision and the other citizens of this Parish." In response, the STPG defendants filed a cross-motion for partial summary judgment, seeking judgment in its favor holding "that the Penn Mill Lakes Homeowners' Association ..., as owner, [was] solely responsible for the operation, and maintenance of the [ponds/lakes] in the ... Subdivision ...." The trial court denied the plaintiffs' motion, granted the STPG's cross-motion, and declared that the HOA owned the greenspace in the Subdivision, including the ponds/lakes, that the ponds/lakes had not been accepted into the parish maintenance system, and therefore, the HOA was responsible for the operation and maintenance of the ponds/lakes in the Subdivision.

Of particular importance to these two motions are the following provisions from Subdivision Ordinance 499, which was in full force and effect at the time the Subdivision was planned, developed, and approved by the STPG:

**SECTION 40-030.0 GENERAL REGULATIONS**

**Sec. 40-030.01 General Provisions**

1. A subdivision or resubdivision of land must be compatible with the major street plan adopted by the Planning Commission. Necessary rights-of-way for any proposed roads or streets shown on the major street plan or *rights of way for construction and maintenance of necessary proposed or existing drainage channels, through the proposed subdivision, must be formally dedicated in perpetuity to the public* through the St. Tammany Parish Police Jury. No building of any sort may be erected upon rights-of-way so dedicated.

* * *

3. No individual, firm, or corporation shall deepen, widen, fill or reroute, or change the location of any existing ditch, stream, or drainage canal or reclaim, fill, dredge or otherwise change the natural condition of land without first obtaining a permit and

16

work order from the Police Jury and any other agency having jurisdiction.

* * *

**Sec. 40-037.02 Residential Retention/Detention Ponds; Acceptance into Parish Maintenance System**

The following procedures are hereby established for acceptance of retention/detention ponds, existing as of the date of this ordinance, into the parish maintenance system:

1.  Petition from owner requesting that the pond be taken into the parish maintenance system. This should include copy of title and survey.

2.  Petition will be reviewed by the Department of Engineering and Department of Public Works to determine what is needed prior to acceptance of the pond. ...

* * *

3.  Petitioner will be advised of what is needed for acceptance and will be advised that acceptance by the parish is for maintenance purposes and not for aesthetic purposes.

4.  If the petitioner agrees with the criteria for acceptance, they will be responsible for providing the following documentation to the parish:

    a.  an "Act of Correction" to the subdivision plat; and

    b.  an "Act of Dedication" with a legal description of the property to be dedicated to the parish.

The following requirements are hereby established for retention/detention ponds, constructed after the adoption of this ordinance. Compliance with all standards as set forth below must be verified by the Department of Engineering prior to acceptance into the parish maintenance system:

5.  The detention pond may be designated as a wet or dry pond ....

* * *

6.  The developer must furnish a copy of the title to the land.

7.  An "Act of Dedication" with a legal description of the property to be dedicated to the parish must be furnished.

8.  The petitioner will be advised of what is needed for acceptance and will be advised that acceptance by the parish is for maintenance purposes only and not for aesthetic purposes.

17

9.  The Parish Engineer can waive any of these requirements or approve alternative methods whenever justification is presented by a Louisiana Licensed Civil Engineer.

(Emphasis added.)

Both the plaintiffs and the STPG defendants offered extensive documentation with respect to these competing motions for partial summary judgment. Pertinent to our decision herein, the following was established by the documents offered by the parties. The Subdivision was developed in several phases. The Subdivision has several retention ponds/lakes, all of which were man-made by the developer, pursuant to an engineered plan designed by Cooper Engineering and/or Leroy Cooper, P.E. and that plan was approved by the STPG. Most of the retention ponds/lakes were created from the Horse Branch Tributary, which was also known as Parish Lateral 23-DW4-12. Parish Lateral 23-DW4-12 was an existing natural drainage channel running through the property, it connected to other publicly owned drainage ways and/or drainage servitudes, and it had previously had maintenance work performed on it by the STPG. Parish Lateral 23-DW4-12 was thus incorporated into the drainage and retention system of the Subdivision. Presently, the Subdivision's ponds retain drainage water from rainfall within the Subdivision and surrounding area and the ponds/lakes connect to or accept water from other publicly-owned drainage ways and/or drainage servitudes. The ponds/lakes were designed and intended to be an integral part of the Subdivision's drainage system. The developer intended to dedicate the retention ponds/lakes to the public (or to the STPG) and the ponds/lakes were designed and constructed according to STPG specifications, more specifically, Subdivision Ordinance 499.

The first preliminary plan for the Subdivision, dated February 12, 2003, provided a restrictive covenant that the HOA would be responsible for maintaining the greenspace in the Subdivision. Due to a concern about responsibility for the ponds/lakes, the STPG Department of Engineering, through Mr. Thibodeaux, sent

18

Mr. Cooper (the Subdivision's design engineer) a letter dated February 20, 2003 explaining to him among other things, that "[i]f the Parish [was] to maintain the detention ponds[/lakes], details of the pond[/lake] must be provided and conform to [Subdivision] Ordinance #499[,]" and that "[t]he following statement [will] be required: 'The Parish is responsible for operation and maintenance of the detention ponds.'" In addition, the letter provided that the "[t]otal acres in easements to be dedicated to the Parish [was] required on [the S]ubdivision plat." Mr. Cooper, on behalf of the developer, responded to this letter by stating that no easements were to be dedicated. Further, the language on the plans for the Subdivision was changed to reflect that all drainage servitudes were to be maintained by the HOA. The developer for the Subdivision stated that change on the plans was made at the direction of the STPG/Department of Engineering, which the STPG denies. On an internal copy of the February 20, 2003 letter, an employee of the STPG Department of Engineering, Earl Manger, P.E., made the notation that the ponds/lakes were "to be maintained by homeowner" and that the total acres of easements to be dedicated to the Parish was "None." The STPG was never provided with details of the ponds/lakes conforming to Subdivision Ordinance 499 and the ponds in the Subdivision were not otherwise dedicated to the STPG in accordance with the requirements set forth in Subdivision Ordinance 499. All of the final recorded plans for the Subdivision—for both phases one and two (including phase two's sub-phases)—provide that that all drainage servitudes are to be maintained by the HOA.

With respect to phase two, the original preliminary subdivision plan for the Subdivision included the same restriction—that all drainage servitudes would be maintained by the HOA. The second version of the plans for phase two contained a note that the ponds/lakes would be maintained by the Parish. However, this notation was removed for the third version of the plans, at the direction of Mr.

Manger, purportedly in order for those plans to be consistent with the plans for phase one. The preliminary plans for phase two were then broken up and the plans for all sub-phases of phase two provided that the greenspace would be maintained by the HOA.

On December 31, 2007, the developer transferred the ownership of the Subdivision's "undeveloped 'green space' and/or 'common areas'" to the HOA, and the survey of the greenspace for the Subdivision reflects that the ponds/lakes are part of the greenspace. According to the minutes of a HOA meeting on March 18, 2008, it was noted that "[t]he ponds are part of the Parish Drainage System, maintained and owned by the [HOA], but granted to the Parish."

On February 10, 2009, an employee of the STPG Department of Engineering sent an email to the then president of the HOA that the parish council had accepted part of phase two of the Subdivision at its February 5, 2009 meeting and "[t]herefore, the roads and drainage [were] in the Parish Maintenance System." However, according to letters in the public record from the STPG Department of Engineering to the members of the St. Tammany Parish Council, this reference was to roadway and roadside drainage maintenance only, and that maintenance of roadside drainage did not include the maintenance of the detention ponds/lakes. The Subdivision's developer has since attempted to formally dedicate the retention ponds/lakes to the STPG; however, the STPG has refused to accept them into the STPG maintenance system.

Based on our *de novo* review of the record, we find no error in the trial court's decision to grant summary judgment declaring that the HOA is the owner of the greenspace in the Subdivision, including the ponds/lakes. The documents offered by both parties establish, and it is undisputed, that the ownership of the greenspace, including the ponds/lakes, was transferred to the HOA. However, regardless of ownership, we find that there are genuine issues of material fact

20

precluding summary judgment in favor of either the plaintiffs or the STPG as to who has the responsibility for operating and/or maintaining the ponds/lakes, whether the ponds/lakes are an integral part of the Subdivision's drainage system, and whether there is a pre-existing drainage servitude in favor of the STPG with respect to the ponds/lakes. The documents establish that the Subdivision's ponds/lakes were created from an existing parish drainage lateral that had been maintained by the STPG, that the parish drainage lateral connected to the Parish-wide drainage system, and that the ponds/lakes in the Subdivision now connect to the Parish-wide drainage system, and that the ponds/lakes in the Subdivision drain storm water from the Subdivision and other areas surrounding the Subdivision. Thus, although the HOA may be the owner of the greenspace, including the ponds/lakes, there is an issue of fact as to whether, prior to the transfer of the lakes/ponds to the HOA, there was a pre-existing drainage servitude in favor of the STPG which could not be extinguished by changing the parish drainage lateral into a drainage retention pond/lake. Furthermore, although the developer of the Subdivision intended to but did not accomplish a formal dedication of the drainage retention ponds/lakes to the STPG or otherwise comply with the requirements of Subdivision Ordinance 499 in order to formally dedicate the ponds/lakes to the STPG, there is an issue of fact as to whether the developer's failure to do so was the decision of the developer or done at the direction of the STPG, and whether a dedication by other means, *i.e.* implied, statutory, or tacit, was accomplished. Lastly, we note that there is documentation that the STPG represented to the HOA that the drainage system for the Subdivision, of which the ponds/lakes are an integral part, had been accepted into the STPG maintenance, and thus, an issue of fact as to whether the STPG should be estopped from taking a position adverse to its representation to the HOA.

Accordingly, to the extent that the trial court granted summary judgment declaring the HOA to be the owner of greenspace in the Subdivision, including the ponds/lakes, we find no error and affirm that part of the judgment. However, because we find genuine issues of material fact exist as who is responsible for maintaining the ponds/lakes or drainage system/servitude in the Subdivision, we affirm the judgment insofar as it denied the plaintiffs' motion for partial summary judgment and reverse the judgment insofar as it granted the cross-motion for summary judgment filed by the STPG declaring that the HOA was responsible for maintaining the ponds/lakes and dismissed the plaintiffs' claims against the STPG related to the maintenance of the ponds/lakes and/or drainage system/servitude.

## CONCLUSION

For all of the above and foregoing reasons, the June 17, 2020 judgment of the trial court is affirmed insofar as it denied the plaintiffs' motion for partial summary judgment against the St. Tammany Parish Government, granted the St. Tammany Parish's Government's cross-motion for partial summary judgment declaring that the Penn Mill Lakes Homeowners' Association owns the greenspace in the Subdivision, including the ponds/lakes, granted the motion for summary judgment filed by the St. Tammany Parish Government, James A. "Red" Thompson, and Jean Thibodeaux, P.E. regarding discretionary immunity, and dismissed the plaintiffs' claims against Mr. Thompson and Mr. Thibodeaux. In all other respects, *i.e.*, that portion of the judgment granting the St. Tammany Parish Government's cross-motion for partial summary judgment declaring that the ponds/lakes have not been accepted into maintenance by the St. Tammany Parish Government and that the Penn Mill Lakes Homeowners' Association is responsible for the operation and maintenance of the ponds/lakes in the Penn Mill Lakes Subdivision, and dismissing the plaintiff's claims against the St. Tammany Parish Government, the judgment is reversed. In addition, the motion to strike the

22

plaintiff's reply brief is granted in part and denied in part, and the plaintiff's request for sanctions is denied. This matter is remanded for further proceedings.

Total costs of this appeal in the amount of $2,508.22 are assessed one-half to the plaintiffs and one-half to the St. Tammany Parish Government.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. MOTION TO STRIKE GRANTED IN PART AND DENIED IN PART; REQUEST FOR SANCTIONS AND COSTS DENIED.**